UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| **FREDERICKA WELLS** | ) | |
| | ) | **CASE NO.** |
| **Plaintiff,** | ) | |
| | ) | **JUDGE:** |
| **vs.** | ) | |
| | ) | **MAGISTRATE JUDGE:** |
| **DAVIDSON TRANSIT ORGANIZATION** | ) | |
| | ) | **JURY DEMAND** |
| **Defendant.** | ) | |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

## I. NATURE OF THE CASE

1. This is an action brought by Plaintiff, Fredericka Wells ("Wells"), by counsel, against Defendant, Davidson Transit Organization ("Defendant") alleging violations of the Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended 42 U.S.C. §2000e *et. seq.*

## II. PARTIES

2. Wells is a resident of Montgomery County, Tennessee, who at all times relevant to this action resided within the geographical boundaries of the Middle District of Tennessee.

3. Defendant maintains offices and routinely conducts business in Davidson County, Tennessee, which is located within the geographical boundaries of the Middle District of Tennessee.

## III. JURISDICTION AND VENUE

4. Jurisdiction is conferred on this Court over the subject matter of this litigation pursuant to 28 U.S.C. §1331; 28 U.S.C. §1343; and 42 U.S.C. § 2000e-5(f)(3).

5. Defendant is an "employer" as that term is defined by 42 U.S.C. §2000e(b).

6. Wells was an "employee" as that term is defined by 42 U.S.C. §2000e(f).

7. Wells satisfied her obligation to exhaust her administrative remedies having timely filed Charges of Discrimination with the U.S. Equal Employment Opportunity ("EEOC") against Defendant (Charge No. 494-2026-01001) alleging discrimination based on her race, sex, and retaliation for engaging in protected activity. Wells received her Notice of Suit Rights and timely files this action.

8. A substantial part of the events, transactions, and occurrences concerning this case arose in the geographical environs of the Middle District of Tennessee; thus, venue is proper in this court.

## IV. FACTUAL ALLEGATIONS

9. Wells, who is an African American female, began working for Defendant in or around August 2010 as a Bus Driver. Throughout her career with Defendant, Wells held various positions; Wells latest position was a Repairman.

10. At all relevant times throughout her nearly fifteen (15) years of employment, Wells met or exceeded Defendant's legitimate performance expectations and received no disciplinary actions or write-ups.

11. On or about February 12, 2025, Wells engaged in a protected activity by making a verbal complaint of race and gender discrimination to Buddha Richards ("Richards"), Maintenance Fleet Manager, and Kymethia Joy Shelton ("Shelton"), Union Shop Representative. Wells reported that David Sanderson ("Sanderson") and Chris Vick ("Vick") were spreading rumors that she had slept with supervisors in order to get extra pay and overtime hours.

12. On or about March 25, 2025, Wells engaged in another protected activity by making another internal complaint directly to Richards about how Sanderson and Vick continued to make similar comments that discriminated against Wells for her race and gender. Wells also reported

that she was no longer asked nor allowed to work overtime due to her complaints, creating a difference of twenty hours per week on average.

13. Wells was the only woman working on third shift at the Myatt Drive maintenance shop location. After her internal complaints and protected activities, Wells was no longer allowed to work overtime, yet Katherine Firrone ("Firrone"), Caucasian, on second shift was allowed to continuously arrive to work up to four hours earlier than scheduled and earn overtime without restriction.

14. Separately, on or about March 25, 2025, Wells made an internal complaint through Human Resources against her supervisor, Alvin Barcus ("Barcus"), for conduct that occurred at the Transit Stop Equipment Gate in December 2024, when Barcus made inappropriate and unwelcome comments about Wells to another employee. Wells was on her way to clock in when Barcus called her name and then proceeded to make inappropriate sexual comments to her about taking her home and cuddling with her. Three witnesses, Michael Height ("Height"), Perry Ingram ("Ingram"), and Joel (LNU), were present and two others were nearby. Height replied to Barcus and said that he should "cuddle with his wife" instead.

15. Wells was so affected by this comment that she avoided Barcus from then on and left that department to work at the Myatt Drive location instead. Wells also reported Barcus' actions to Management and the Shop Representative.

16. On or about April 15, 2025, Human Resources asked Wells to stop by to review her complaints.

17. On or about May 5, 2025, a Human Resources Generalist, Delennio Bond ("Bond"), male, sent Wells a letter finding no evidence to support her complaint. Shortly after this finding, Bond was promoted to Supervisor within the Human Resources Department.

18. Wells then went on vacation in early May 2025, and around the same time, her manager, D'Nese Nicolosi ("Nicolosi") was promoted to Director. Nicolosi soon after eliminated Wells' position at the Myatt Drive location, which forced her to return to the department under Barcus, her harasser, that Wells reported less than three months prior.

19. However, Wells did not work under Barcus for long, as within days she was suddenly put on paid administrative leave on or about May 20, 2025, by Nicolosi for alleged theft of time from April 20, 2025—Easter Sunday when the Myatt Drive facility was closed. However, Well's supervisor, Charles Ragin ("Ragin"), signed off on her job completion and hours after each shift. On April 20, Ragin gave Wells permission to some African American employees, who were already scheduled, to come into work a couple of hours early to complete work left over and incomplete from the weekend. Upon information and belief, Ragin was not disciplined.

20. When Wells inquired with Human Resources about her suspension, she was told that her suspension was a "departmental issue" as opposed to a Human Resources matter. Wells was not told what the difference was or why.

21. At that time, despite company policy requiring that a specific incident with a corresponding date and time be reported before camera footage may be reviewed, Human Resources reviewed surveillance footage of Wells from April 20, 2025, and used that review to search for pretextual reasons to terminate her.

22. Around this time, three male employees, Ray Clark, "Akman" (LNU), and Nick Ray, were simultaneously investigated and terminated for alleged time theft in May of 2025, but the union subsequently filed a grievance on behalf of those male employees, and not Wells. Those employees ultimately received a sixty (60)-day unpaid suspension before being returned to work.

Ms. Wells, the sole woman on third shift, was not asked to be a part of this grievance, nor was she afforded the same outcome.

23. Upon information and belief, these males had not made an internal complaint with HR within the past three months. Upon information and belief, these three male employees were allowed to continue to work until August of 2025 while Wells was placed on suspension in May 2025 until her termination.

24. In or around May 2025, Wells interviewed for a position with the Metro Water Department. During the interview, she was asked specifically whether she knew Vince Malone ("Malone"), one of the few employees aware of her prior EEOC charge and internal complaints against Defendant. Shortly after, Wells received an email informing her that the position had been rescinded.

25. On or about July 30, 2025, approximately three months after being put on suspension, Wells was terminated for allegedly stealing time by taking extended breaks. The reason given for her termination is pretext for discrimination and retaliation based on her gender and race. Similarly situated employees outside of Wells' protected classes who engaged in the same or similar conduct were not terminated. Additionally, Wells' supervisor approved and signed off on her completed work and hours after each shift.

26. Other African American employees, such as General Helpers within the Transit department, Stephanie Beckwith and Michael Elam, have made complaints against Barcus that were also found unsubstantiated, and following the conclusions of the investigations, Nicolosi terminated each employee.

## V. CAUSES OF ACTION

### COUNT I: TITLE VII – RACE DISCRIMINATION

27. Wells hereby incorporates paragraphs one (1) through twenty-six (26) of her Complaint as if the same were set forth at length herein.

28. Wells is an African American woman.

29. Defendant discriminated against, subjected Wells to disparate treatment and terms of employment, and terminated her employment on the basis of her race.

30. Defendant's actions were willful, intentional and done with reckless disregard for Wells' rights as protected by Title VII.

31. Wells has suffered damages as a result of Defendant's unlawful actions.

**COUNT II: TITLE VII - SEXUAL HARASSMENT**

32. Wells hereby incorporates paragraphs one (1) through thirty-one (31) of her Complaint as if the same were set forth at length herein.

33. Wells was sexually harassed and subjected to a hostile work environment.

34. Defendant's actions are in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §200e *et. seq.*

35. Defendant's actions were willful, intentional and done with reckless disregard for Wells' rights as protected by Title VII.

36. Wells has suffered damages as a result of Defendant's unlawful actions.

**COUNT III: TITLE VII - RETALIATION**

37. Wells hereby incorporates paragraphs one (1) through thirty-six (36) of her Complaint as if the same were set forth at length herein.

38. Wells engaged in protected activities by making complaints of race and gender discrimination to Defendant.

39. Defendant retaliated against Wells for engaging in protected activity by terminating her employment.

40. Defendant's actions were willful, intentional and done with reckless disregard for Wells' rights as protected by Title VII.

41. Wells has suffered damages as a result of Defendant's unlawful actions.

## VI. REQUESTED RELIEF

**WHEREFORE**, Plaintiff, Fredericka Wells, respectfully requests that this Court enter judgment in her favor and award her the following relief:

1. Permanently enjoin Defendant from engaging in any employment policy or practice that discriminates against an employee based on their race, sex, and/or retaliates against any employee after engaging in a protected activity;

2. Reinstate Plaintiff to the position, salary, and seniority level she would have enjoyed but for Defendant's unlawful employment actions, or award her front pay in lieu thereof;

3. Award Plaintiff all wages, benefits, compensation, and other monetary loss suffered as a result of Defendant's unlawful actions;

4. Award Plaintiff compensation for any and all other damages suffered as a consequence of Defendant's unlawful actions;

5. Award Plaintiff compensatory damages for violations of Title VII;

6. Award Plaintiff punitive damages for Defendants' violations of Title VII;

7. Award Plaintiff all costs and attorney's fees incurred as a result of bringing this action;

8. Award Plaintiff pre- and post-judgment interest on all sums recoverable;

and

9. Award Plaintiff all other legal and/or equitable relief this Court sees fit to grant.

Respectfully submitted,

BIESECKER DUTKANYCH & MACER, LLC

By: */s/ Rachel Ringer*
Rachel Ringer, Atty. No. 041951
Kyle Biesecker, Atty. No 028872
3200 West End Avenue, Suite 500
Nashville, TN 37203
(615) 783-1602
rringer@bdlegal.com
kfb@bdlegal.com

**DEMAND FOR JURY TRIAL**

Plaintiff, Fredericka Wells, by counsel, requests a trial by jury on all issues deemed so triable.

Respectfully submitted,

BIESECKER DUTKANYCH & MACER, LLC

By: */s/ Rachel Ringer*
Rachel Ringer, Atty. No. 041951
Kyle Biesecker, Atty. No 028872
3200 West End Avenue, Suite 500
Nashville, TN 37203
(615) 783-1602
rringer@bdlegal.com
kfb@bdlegal.com